**Kriss Halpern, Esq.  (SBN 131389)**
Email: **krisshalpern11@gmail.com**
**LAW OFFICES OF KRISS HALPERN**
1021 Fifth Street, Suite 209
Santa Monica, California 90403
Landline Telephone Number:  (310) 458-9340
Fax Number: (310) 395-4876
**Attorney for Plaintiff Pete Tuck**

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

| | |
|---|---|
| PETER A. TUCK, an individual,<br><br>Plaintiff<br><br>v.<br><br>DURANGO FIRE PROTECTION DISTRICT AND DOES 1-20,<br>Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, VIOLATION OF SECTION 504 OF THE FEDERAL REHABILITATION ACT, VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT, VIOLATION OF 29 U.S.C. SECTION 1983 CIVIL RIGHTS ACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

1

PETER A. TUCK ("Mr. Tuck"), an individual, Plaintiff, residing in La Plata County, State of Colorado, alleges as follows:

Introductory Statement of the Case

1. This is an action for disability discrimination in employment under federal and Colorado law arising from the termination of a firefighter captain because of a heart attack, followed by the refusal of the fire district employer to consider the recovery of the firefighter from successful treatment, including the treating cardiologist's affirmation of the firefighter's ability to perform all essential tasks of a firefighter captain without restriction.

Parties

2. Plaintiff Peter A. Tuck ("Mr. Tuck") is and was an adult individual residing in the State of Colorado, county of La Plata, at all times relevant to this action. At the time the unlawful acts described below began, Mr. Tuck was employed full-time as a Member of the Durango Fire Protection District, specifically a firefighter Captain, in the County of La Plata, State of Colorado.

3. The Durango Fire Protection District ("the District") is a special district formed under the Special District Act of Colorado (Title 32, Article 1, C.R.S.) to provide fire protection, emergency medical services, rescue, hazardous material mitigation, prevention, public education and public service in the Durango

region of the State of Colorado for the City of Durango and portions of La Plata County.

4. Mr. Tuck is ignorant of the true names and capacities of Defendants sued herein as DOES 1-20, inclusive, and therefore sues these Defendants by fictitious names. Mr. Tuck will seek leave to amend this Complaint to state the real names and capacities of DOES 1-20, or any of them, if and when they are ascertained.

5. Mr. Tuck is informed and believes and thereon alleges that each fictitiously named Defendant is responsible in some manner for the occurrences alleged herein, and that the injuries of Mr. Tuck as alleged in this Complaint were proximately caused by these Defendants, as well as defendants individually identified herein.

6. Mr. Tuck is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, officer, employee, employer, partner, joint venturer, parent, manager, subsidiary, and/or affiliate of each, or one or more of, the remaining Defendants and, in doing the things hereinafter alleged, each was acting within the course and scope of such position with the permission, knowledge, consent and permission of one or more of the others.

//

//

COMPLAINT OF PLAINTIFF PETER A. TUCK

Employees, Budget and Funding of the District

7. Mr. Tuck is informed and believes that at all times relevant to this action, the District employed more than 100 persons, providing services over some 325 square miles, with stations open 24 hours a day, seven days a week.

8. According to the District's 2018 final budget posted online by the District, the projected revenue of the District was $13,872,636 for the calendar year 2018.

9. According to the District's 2018 final budget posted online by the District (pp. 10-11), funding for the District's operations comes from local tax collections in the form of a mill levy on property within the District, specific ownership taxes on motor vehicles collected by the County of La Plata, payments in lieu of taxes from the Southern Ute Indian Tribe for tax exempt property owned by the tribe that is within the District; the City of Durango from a general fund primarily generated by sales tax collected within the City; ambulance billing; state and federal grants; and wildland fire billings.

10. The District is responsible for employing persons, and operating its facilities, under the constitutions, laws and statutes of the State of Colorado, and the United States of America.

//

//

//

Relevant Federal and Colorado Disability Discrimination in Employment Statutes

11. Under federal law, the Americans with Disabilities Act (42 U.S.C. §§ 12101, et seq) and the Rehabilitation Act (29 U.S.C. §§ 791, et seq) expressly prohibit discrimination in employment on the basis of disability.

12. Under Colorado law, the Colorado Anti-Discrimination Act ("CADA") (CRSA 24-34-301, et seq) expressly prohibits discrimination in employment on the basis of disability.

Venue

13. Venue in this action lies in this Court under 28 U.S.C. §1391 because the events described and alleged below occurred in or about the City of Durango, County of La Plata, State of Colorado.

Jurisdiction

14. The District Courts of the United States of America have original jurisdiction of this action under 28 U.S.C. § 1331 because certain claims alleged herein arise under the Constitution and statutes and laws of the United States of America.

**GENERAL FACTUAL BACKGROUND PERTAINING TO ALL CAUSES OF ACTION**

Hiring and Promotion of Mr. Tuck by the District.

15. Mr. Tuck was initially hired by the City of Durango Fire Department ("City Department") as a part-time Reservist firefighter, on or about March 1991.

16.  As a Reservist member of the City Department, Mr. Tuck performed all assigned duties properly and professionally, so that he was offered full-time employment as a firefighter on or about January 1, 1995.

17. Because Mr. Tuck enjoyed his career and duties and the benefits of his employment by the City Department, Mr. Tuck accepted the offer and became a full-time firefighter on or about January 1, 1995.

18. During his employment as a firefighter with the City Department, Mr. Tuck continued to perform all assigned duties properly and professionally, so that he was offered promotion to Lieutenant on or about January 1999.

19. Because Mr. Tuck continued to enjoy his career and duties and the benefits of his employment by the City Department, Mr. Tuck accepted the offer and became a Lieutenant on or about January 1999.

20. During his employment as a Lieutenant with the City Department, Mr. Tuck continued to perform all assigned duties properly and professionally, so that he was offered promotion to Fire Captain for a consolidated fire district known as the Durango Fire Rescue Authority ("the Rescue Authority"), which was a successor in interest to the City Department, on or about January 1, 2002.

21. Because Mr. Tuck continued to enjoy his career and duties and the benefits of his employment by the City Department, which became part of the Rescue

Authority, Mr. Tuck accepted the offer and became a Fire Captain on or about January 1, 2002.

22. The District is a successor in interest of the entity which had been the Rescue Authority and has been operating as such since on or about the year 2014.

23. Throughout his employment as a member of the City Department, the Rescue Authority, and the District, Mr. Tuck continually received reviews which rated him as either Superior or Exceptional.

24. At all material times, Mr. Tuck intended to continue his employment with the District, hoped and worked for further promotion, and intended to continue his employment with the District until he reached full retirement age, earning all rights and benefits to which he was entitled.

25. Mr. Tuck was born on October 16, 1963 and, under the terms and conditions of employment with the District, Mr. Tuck anticipated and intended to remain a member of the District, with the expectation and anticipation of promotion, along with increases in salary and benefits, at least until he turned age 65 on October 16, 2028.

26. At no time prior to the unlawful acts as alleged below had Mr. Tuck ever done anything, or heard anything, which caused him to believe that his ongoing employment as a member of the District would not continue as it had for more

than twenty years, with raises and promotions and increased benefits provided to members of the District.

27. As of January 2016, Mr. Tuck earned a base salary of $28.08/hr., averaging approximately 56 hours per week, with three of those hours overtime at time and a half, totaling approximately $1614.60 per week, or $83,959.92 per year. Mr. Tuck received benefits including but not limited to health insurance for himself and his wife and dependent child; retirement pay of 10.5% of gross salary; vacation of 9.2 hours accumulated biweekly, or 240.24 hours annually; sick time of 4.62 hours biweekly, or 120.12 hours annually; paid holidays of 12 additional hours per designated holiday.

**Mr. Tuck Suffered a Heart Attack While Performing Duties on 1/31/2016, Followed by Medical Recovery and Clearance for Duty without Restriction.**

28. On January 31, 2016, Mr. Tuck suffered a heart attack (medically known as a myocardial infarction) while performing duties as a fire Captain employed as a member of the District, which included exercise and shoveling snow, during a 48 hour shift from 0700 on January 30, 2016 until 0700 on February 1, 2016.

29. Mr. Tuck was driven by ambulance to the Mercy Regional Medical Center in Durango, CO where he was successfully resuscitated, and provided two vascular stents on his left coronary artery to allow for unblocked circulation of blood to and through his heart.

30. Following his heart attack and surgical care, Mr. Tuck took part in ongoing treatment and recovery at the Mercy Regional Medical Center in Durango, CO, overseen by cardiologist Susie Kim, M.D., F.A.C.C.

31. Dr. Kim is, and at all times relevant to this action was, a cardiology specialist and Fellow of the American College of Cardiology ("F.A.C.C."), who was the primary treating physician for the recovery of Mr. Tuck from the heart attack he suffered on January 31, 2016.

32. In or about March 2016, as his recovery was progressing but not yet complete, Mr. Tuck met with District fire chief Hal Doughty and other officers of the District. Chief Doughty asked Mr. Tuck if he was familiar with the guidelines of the National Fire Protection Agency ("NFPA") pertaining to the health of firefighters, specifically NFPA 1582. Chief Doughty then advised Mr. Tuck that he should familiarize himself with the NFPA guidelines.

33. The March 2016 meeting with District Chief Doughty was the first time NFPA 1582, or any other NFPA health guideline, had ever been raised by Chief Doughty, or anyone else at the District, to Mr. Tuck, with regard to Mr. Tuck's heart attack, or any other medical condition suffered by any member of the District.

34. At the March 2016 meeting, neither Chief Doughty, nor anyone else, told Mr. Tuck that he would not be allowed to return to work because he suffered a heart

attack. Nor was any particular portion of NFPA 1582 given to him, or mentioned.

35.  As of March 2016, Mr. Tuck had accumulated more than eight months of sick time and vacation time which was unused and owing to him.

36. Mr. Tuck is informed and believes that neither NFPA 1582, nor any part of it, had ever previously been raised or used as a condition of continued employment for a District member at any time.

37. Prior to Mr. Tuck's conversation with Chief Doughty in or about March 2016, neither the NFPA health guidelines, NFPA 1582, nor any part of them, had ever been mentioned to Mr. Tuck as in any way determinative of his ongoing employment, or even a concern or consideration at all.

38. As his recovery progressed, and while Mr. Tuck was still on paid leave previously earned, Dr. Kim was asked to provide a written update to the District on Mr. Tuck's heart attack and treatment.

39. By letter dated April 24, 2016, Dr. Kim advised and affirmed that Captain Tuck had been under the care of her and her medical group since his medical emergency on January 31, 2016.

40. Dr. Kim further advised and affirmed by letter dated April 24, 2016 that Captain Tuck "has been improving steadily," and that in six months time from his January 31, 2016 heart attack Captain Tuck "will have no physical restrictions

on his physical activity if he continues to improve." She further advised that she

believed that Mr. Tuck "will be able to fulfill the physical requirements needed

for his Fire Captain duties."

41. Attached hereto at Ex. A is a true and correct copy of Dr. Kim's letter of April

24, 2016 which was provided to the District on or about that time.

42. In response to the letter of Dr. Kim regarding the recovery of Mr. Tuck and

anticipated ability to return to work without physical restrictions, the District

sent Dr. Kim a list of medical criteria designated Category A and Category B

conditions which the District took out of a document prepared by a private trade

association known as the National Fire Protection Agency ("NFPA").

43. Specifically, the District sent Dr. Kim portions taken from Chapter 6 of a

document designated NFPA 1582. Chapter 6 of NFPA 1582, titled "Medical

Evaluations of Candidates," deals with the testing and selection of firefighter

job applicants, not members of a fire department, district, or other type of

agency who become ill or injured.

44. In chapters of NFPA 1582 pertaining to the evaluation and testing of firefighter

members of a department, district or other type of agency, such as Mr. Tuck,

there are no Category A and Category B criteria at all. Rather, there are

descriptions of approaches to take in testing and examining individual

firefighters for medical clearance. The District never sent these sections, or any

COMPLAINT OF PLAINTIFF PETER A. TUCK

portion of them, to Dr. Kim, or anyone else, with regard to Mr. Tuck and his health in 2016. Rather, the District and DOES 1-20 at all times failed and refused to undertake any individualized review of Mr. Tuck at any time, and ignored its obligations otherwise under law, and all requests from Mr. Tuck that they consider his individual abilities.

45. Mr. Tuck is informed and believes that NFPA 1582, Chapter 6, has never been adopted by the State of Colorado in any way.

46. Mr. Tuck is informed and believes that NFPA 1582, Chapter 6, had never been adopted by the District, even for firefighter candidates, let alone members of the District such as Mr. Tuck, until after the District decided to terminate Mr. Tuck from employment because of his heart attack, and searched for pretexts to support its decision to do so.

47. Nothing about NFPA 1582, Chapter 6, was explained to Mr. Tuck by the District, or anyone associated with the District, at the time the District sent a list of health criteria taken from NFPA 1582, Chapter 6, to his cardiologist, Dr. Kim, and asked her to state whether or not Mr. Tuck fell into any condition listed under either Category A or Category B.

48. Dr. Kim responded to the request of the District by letter dated April 29, 2015 [sic], actually sent on April 29, 2016, with answers to all criteria listed, advising that the only criteria requiring an affirmative answer was the question whether

or not Mr. Tuck ever suffered Coronary Artery Disease ("CAD") and "history of myocardial infarction." Because Mr. Tuck suffered a heart attack on January 31, 2016, the answer could only be yes, he had, and Dr. Kim stated as such.

49. In answer to all other medical conditions provided by the District out of NFPA 1582, Chapter 6, Dr. Kim explained that Mr. Tuck either did not have the condition, that he suffered no material consequence of the condition, and/or that she anticipated Mr. Tuck would not suffer from the condition once his treatment and recovery was complete, within six months from medical injury.

50. Attached hereto at Ex. B is a true and correct copy of Dr. Kim's letter to the District sent on April 29, 2016 in response to the District asking about category A and category B medical conditions taken from NFPA 1582, chapter 6 for "Medical Evaluations of Candidates."

51.  As discussed more fully below, the District terminated Mr. Tuck from employment, by letter on May 2, 2016, based solely on a disability, refusing any consideration of Mr. Tuck's individual ability to perform the essential functions of his job, leave to complete his recovery as anticipated by Dr. Kim, or any consideration or interactive process regarding reasonable accommodations.

52. Despite his shock and distress from the District's May 2, 2016 termination letter, Mr. Tuck continued his treatment and recovery, and continued to seek a return to work.

53. By letter dated August 19, 2016, Dr. Kim advised and affirmed that Mr. Tuck had, in fact, recovered well from his heart attack, as anticipated, graduated from the Mercy Regional cardiac rehabilitation program, and had "no restrictions on activity."

54. Dr. Kim further advised and affirmed that Mr. Tuck was qualified to perform all duties of a firefighter with the District, without restriction.

55. Attached hereto at Ex. C is a true and correct copy of Dr. Kim's letter of August 19, 2016.

56. The August 19, 2016 letter of Dr. Kim was provided to the District, but the District maintained its refusal to permit Mr. Tuck to return to employment with the District.

57. At no time prior to his heart attack on January 31, 2016 did the District ever advise Mr. Tuck that it might not, or would not, allow him to return to duty once he recovered from an illness and was medically cleared for duty.

58. At no time prior to his heart attack on January 31, 2016 did the District ever advise Mr. Tuck that it had chosen to abide by any particular set of criteria or recommendations from the National Fire Protection Agency ("NFPA") pertaining to the health of members of the District, or any other such guidelines, other than being able to perform the essential duties of the position for which he

COMPLAINT OF PLAINTIFF PETER A. TUCK

was employed, and being able to pass physical examinations that Mr. Tuck had always passed, and was prepared to take again following his recovery.

59. At no time prior to January 31, 2016 did the District ever advise Mr. Tuck that it would be unable to provide an accommodation of waiting for him to return to duty as a Captain with the District as he recovered from a medical illness or accident. In fact, the District had previously granted leave to firefighters employed as members of the District suffering injury or illness during a recovery of many months, including recoveries that far exceeded the six months Dr. Kim advised was needed for Mr. Tuck.

60. Mr. Tuck is informed and believes that the District never adopted the NFPA health guidelines, or any portion of them, at any time prior to his heart attack on January 31, 2016.

61. The State of Colorado has never adopted the NFPA health guidelines, or any part of them, specifically including Chapter 6, for firefighters of the State of Colorado, whether candidates, or members of a district or agency of any kind.

Termination of Mr. Tuck and Refusal to Cease Discrimination.

62. On May 2, 2016 Mr. Tuck was served a letter from Chief Doughty dated May 2, 2016 advising him of his termination from employment by the District.

63. Attached hereto at Ex. D is a true and correct copy of the May 2, 2016 letter from Chief Doughty advising Mr. Tuck of his termination from employment by

the District, falsely claiming that Mr. Tuck's termination was required by the NFPA guidelines, specifically NFPA 1582, Section 6.10.1.1, a section of Chapter 6, titled "Medical Evaluations of Candidates." Mr. Tuck was not then a "candidate" for a firefighter position with the District, and had not been one for more than 20 years.

64. On May 2, 2016, the District for the first time provided Mr. Tuck an updated fire captain job description dated March 2016 which referred to the NFPA 1582 health guidelines for firefighter applicants as part of the job description of a firefighter captain with the District, thereby altering the job description in order to discriminate against Mr. Tuck, and including terms which are not actual job functions at all, let alone essential ones. (Cf Hawkins v. Schwan's Home Serv., 778 F.3d 877, 884-889 (10th Cir. 2015) (quoting and explaining 29 CFR 1630.2 (n) for what constitutes an "essential function" of a position) ("...an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description.") (citation omitted). Indeed, the newly added term was neither job-related, nor uniformly enforced, nor consistent with business necessity. (see Hawkins v. Schwan's Home Serv., 778 F.3d 877, 888-889 (10th Cir. 2015) (citations omitted).

65. Mr. Tuck is informed and believes that prior to Mr. Tuck's heart attack on January 31, 2016 the District had never once used the NFPA health guidelines, or any part of them, specifically including Chapter 6, to review and/or terminate a member of the District.

66. Mr. Tuck is informed and believes that prior to Mr. Tuck's heart attack on January 31, 2016, the District had never mentioned, referenced, or referred to the NFPA health guidelines, or any part of them, on any firefighter job description of the District.

67. Attached hereto at Exhibit E is a true and correct copy of the District's job description of a firefighter Captain used prior to Mr. Tuck's heart attack on January 31, 2016, which includes the District's description of physical and medical testing required for the position and provided to Mr. Tuck.

68. Attached hereto at Ex. F is a true and correct copy of the District's job description of a firefighter Captain marked as "Revised March 2016" which Mr. in order to manufacture a pretext to discriminate against Mr. Tuck and terminate his employment due to a disability.

69. Mr. Tuck has been extensively trained in how to manage and handle the disability arising from the heart attack he suffered on January 31, 2016, and has been ready, willing, and able to return to employment full-time as a Captain with the District at all times since his recovery, no later than August 19, 2016.

70. Following his termination on May 2, 2016 by the District, Mr. Tuck made repeated and ongoing efforts to return to work with the District, which efforts have at all times been ignored and/or refused by the District.

71. Mr. Tuck provided the District proof of his recovery from the heart attack he suffered, and ability to perform all duties of a Captain with the District, including the April 19, 2016 letter of his treating cardiologist, Dr. Kim, which proof has at all times been ignored and/or refused by the District.

72. Mr. Tuck does not smoke cigarettes.

73. Mr. Tuck does not drink alcohol.

74. Mr. Tuck vigorously exercises regularly.

75. Mr. Tuck has no history of any other significant medical condition; nor does he have a medical condition of any kind which prevents him from performing all the duties of a firefighter captain with the District.

76. On October 27, 2016, Mr. Tuck was examined by a physician named Steven Friedrich, M.D. who found that he "...has no physical limits that would prevent him from being a firefighter…." Dr. Friedrich was appointed by an agency known as the Fire and Police Pension Association of Colorado ("FPPA") to examine Mr. Tuck.

77. Mr. Tuck is informed and believes that Dr. Friedrich specializes in cardiology and has performed physical reviews for firefighters in fire districts in the State of Colorado pertaining to cardiac conditions.

78. Dr. Friedrich further found after examining Mr. Tuck and reviewing his medical records,

> "Mr. Tuck...strongly desires to return to work as a firefighter. He has no exercise limitation. He is in excellent physical condition. He has no physical limitations that would prevent him from being a firefighter...."

79. On October 28, 2016, Mr. Tuck was examined by a physician named Leonard Zemel, M.D. who found that Mr. Tuck "...appears stable to perform the necessary firefighter physical requirements." Dr. Zemel was appointed by an agency known as the Fire and Police Pension Association of Colorado ("FPPA") to examine Mr. Tuck.

80. Despite the findings of medical tests, the written determination of Mr. Tuck's treating cardiologist, and the reviews of at least two independent physicians who examined him, one of whom was an experienced cardiologist, the District and DOES 1-20 continued to insist that NFPA guidelines applied which did not allow the employment of a firefighter who had suffered a heart attack, and refused to allow Mr. Tuck to return to his position as a firefighter with the District, regardless of his individual ability to do so.

81. The claim by the District and DOES 1-20 of what the NFPA guidelines require, or even that the NFPA guidelines apply to Mr. Tuck's employment with the District, has been false at all times, and used as a pretext for discriminating against Mr. Tuck on the basis of 1) an actual impairment which substantially limits one or more major life activities, and/or 2) a record of such impairment; and/or 3) Mr. Tuck being regarded as having such an impairment.

82. Mr. Tuck has repeatedly provided the District with explanation and proof of the District's false and improper reading of the NFPA guidelines that it wrongly claims to be following in refusing his employment, which explanation and proof have at all times been ignored and/or refused by the District.

83. Mr. Tuck has, inter alia, repeatedly explained and advised that the NFPA guidelines were never adopted by the District as a condition of employment prior to Mr. Tuck's heart attack.

84. The District has failed to provide any proof or evidence of when and whether the NFPA guidelines were ever lawfully adopted by the District.

85. Mr. Tuck has, inter alia, repeatedly explained and advised that the NFPA guidelines do not contain any requirement that suffering a heart attack precludes a firefighter from returning to work as a firefighter, regardless of successful treatment and recovery and test results and examinations showing an ability to perform all functions. In fact, there is no such requirement in the NFPA

guidelines, and the repeated claim otherwise by the District and DOES 1-20 is an intentional misrepresentation used as a pretext for discrimination.

86. Mr. Tuck has, inter alia, explained and advised that there are many other firefighters in the State of Colorado who successfully returned to work and performed their duties following a heart attack, and he has even supplied the names of these firefighters, and the agencies where they are working as firefighters.

87. Mr. Tuck has, inter alia, explained and advised that other firefighters with the District suffered serious injuries which required leave of many months, or much longer, who were allowed to return to work with the District as firefighters following treatment and recovery.

88. Mr. Tuck has, inter alia, identified a firefighter with the District who suffered a heart attack, was on leave for months, then tested following his recovery, and allowed to return to work with the District as a volunteer firefighter, and did so safely for several years, prior to the termination of Mr. Tuck.

89. The District has ignored and refused to follow NFPA guidelines on the testing and examination of firefighters for a return to work following illness or injury, which guidelines are in the very document, NFPA 1582, the District cites to justify its discrimination against Mr. Tuck.

COMPLAINT OF PLAINTIFF PETER A. TUCK

90. The District has ignored and refused to follow its own history of testing and examining a firefighter following a heart attack for a return to work prior to its decision to discriminate against Mr. Tuck.

91. During the entire time of Mr. Tuck's employment with the District and DOES 1-20, and their predecessors in interest, said defendants never applied or referenced or followed NFPA guidelines pertaining to medical evaluations of firefighters.

92. Following the heart attack of Mr. Tuck, and his treatment and recovery, the District and DOES 1-20 never applied or followed or even considered NFPA standards regarding a physician's review of a firefighter following a heart attack, as set forth at Section 9.4.3 of NFPA 1582, and never reported on, or even considered, whether there were any applicable job limitations that pertained to Mr. Tuck as an individual.

93. The District and DOES 1-20 refused to make an individualized assessment of Mr. Tuck's recovery from his heart attack and ability to perform his duties following his recovery.

94. The District and DOES 1-20 refused to allow Mr. Tuck to use earned and accumulated sick and vacation time to complete his recovery when Mr. Tuck's employment was terminated on May 2, 2016, and instead sent him a check paying for the time accumulated, despite his request to use that time owed.

**Mr. Tuck Filed a Complaint with the EEOC and the EEOC Found that Discrimination by the District Occurred in Violation of Federal Law.**

95. Mr. Tuck timely filed a written notice of claim with the Equal Employment Opportunity Commission of the United States of America ("EEOC"), acting under federal law and a workshare agreement with the Colorado Civil Rights Division, on or about October 28, 2016.

96. The EEOC prepared and issued a Charge of Discrimination on behalf of itself and the Colorado Civil Rights Division, Charge No. 541-2017-00189, which charge was signed and dated by Mr. Tuck.

97. After the District received notice that Mr. Tuck had filed a charge based on his termination, the District advised Mr. Tuck that he would no longer be allowed to enter any fire station of the District, specifically including the opportunity to visit his friends and co-workers, and to use exercise equipment he had previously been promised he could use as long as he wanted. Under the law of the Tenth Circuit, a retaliatory act arising from a complaint of discrimination to an agency is reasonably related to the same facts stated in the complaint and a new complaint need not be filed for the subsequent act. *Seymore v. Shawver & Sons* 111 F.3d 794, 799 (10th Cir. 1997) (citations omitted).

98. The EEOC conducted an investigation which included the review of extensive written and oral submissions by both the District and Mr. Tuck regarding the facts and law pertaining to Mr. Tuck's charge of discrimination by the District.

99. The EEOC found in favor of Mr. Tuck and issued a Determination dated March 9, 2018.

100.     A true and correct copy of the EEOC Determination dated March 9, 2018 is attached hereto at Ex. G.

101.     A conciliation meeting was held in Denver, CO under the directions of the EEOC on or about April 4, 2018 during which further submissions regarding the relevant law and facts took place, but the claims of Mr. Tuck were not resolved.

102.     The EEOC issued a notice of right to sue by certified mail addressed to counsel for Mr. Tuck dated October 10, 2018, in an envelope postmarked October 11, 2018, which was received on October 20, 2018.

103.     The notice of right to sue states,

"If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice."

104.     This Complaint is timely filed with this Court following the exhaustion of administrative remedies by Mr. Tuck under federal and Colorado law.

**FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT [42 U.S.C.A. §§12101, et seq] BY PLAINTIFF PETER A. TUCK AGAINST DEFENDANTS DURANGO FIRE PROTECTION DISTRICT AND DOES 1-20.**

105.    Mr. Tuck alleges and incorporates by reference herein as if restated in full each of the preceding paragraphs.

106.    The Americans with Disabilities Act of 1990, *42 U.S.C. §§ 12101*, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *42 U.S.C. § 12112*. One such term, condition and privilege of employment is the right to a leave of absence, or sick leave. 29 C.F.R. § 1630.4 (a) (v).

107.    The ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, states that the protections of the Americans with Disabilities Act of 1990 are to provide broad protections to persons with disabilities, and specifically abrogates court-created limitations on those protections. See, e.g., *Martin v. Union Pac. R.R. Co.*, 2018 U.S. Dist. LEXIS 94310, 13 (U.S.D.C. Colorado). [See *29 C.F.R. § 1630.1*: "Broad coverage. The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the

ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis."]

108.    The Americans with Disabilities Act of 1990, *42 U.S.C. § 12102 (1)* defines "disability" as an individual with either (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

109.    The surgical addition of stents, the use of medication, and other remedial measures taken by Mr. Tuck in the treatment of his medical condition existing when he suffered a heart attack on January 31, 2016 are each mitigating measures providing ameliorative effects as defined at *42 U.S.C. § 12102 (4) (E)* and, as such, shall not be considered in determining whether or not Mr. Tuck has a condition which substantially limits a major life activity. Without the use

of these remedial measures, Mr. Tuck would have a condition that would substantially limit all major life activities and place him at risk of death.

110.     Mr. Tuck has a record of an impairment that substantially limits one or more major life activities which were not transitory or minor as defined at *42 U.S.C. § 12102 (3) (B)*. [See *29 C.F.R. § 1630.2 (g), (h), (i), and (j)*.]

111.     As a result of the heart attack suffered on January 31, 2016, Mr. Tuck learned that he has a disability that substantially limits major life activities related to the cardiovascular and circulatory systems of his body if not properly and successfully treated. [Cf *29 C.F.R. § 1630.2 (g), (h), (i) and (j)*.]

112.     Mr. Tuck has been regarded by the District and DOES 1-20 as having an impairment that substantially limits one or more major life activities at all times since he suffered a heart attack on January 31, 2016. [Cf *29 C.F.R. § 1630.2 (g), (h)*.]

113.     Despite Mr. Tuck and his cardiologist, Dr. Kim, advising the District that they anticipated Mr. Tuck's full recovery in six months from his medical injury, and that they expected Mr. Tuck would be able to perform his duties without restriction so long as his recovery continued, the District and DOES 1-20 refused to engage in a good faith interactive process or individualized assessment of any kind, and unilaterally chose to terminate Mr. Tuck's

employment on the basis of a disability without regard to whether or not Mr.

Tuck was, or would soon be, able to perform the functions of his work.

114.     Despite Mr. Tuck and his cardiologist, Dr. Kim, advising the District and

DOES 1-20 that Mr. Tuck had, in fact, fully recovered from medical injury, and

that Mr. Tuck was able to perform his duties without restriction, the District

continued to refuse to allow Mr. Tuck the opportunity to return to work, engage

in an interactive process to make a reasonable determination regarding Mr.

Tuck's ability to return to his position, or make an individualized assessment of

Mr. Tuck's ability to perform the essential tasks of his position.

115.     The District and DOES 1-20 failed and refused to provide Mr. Tuck with

leave and/or the reasonable accommodation of allowing Mr. Tuck time to

recover from his medical injury so that he could return to work without

restriction.

116.     The District and DOES 1-20 failed and refused to provide Mr. Tuck with

leave and/or the reasonable accommodation of allowing Mr. Tuck time to

recover from his medical injury despite never advising Mr. Tuck of any undue

prejudice it might suffer from providing the reasonable accommodation

requested, and the non-existence of any such undue prejudice.

117.     The District and DOES 1-20 failed and refused to provide Mr. Tuck with

leave and/or the reasonable accommodation of allowing Mr. Tuck time to

recover from his medical injury despite having a position available that Mr. Tuck was able to perform without restriction following his recovery.

118.     The District and DOES 1-20 used qualification standards, employment tests or other selection criteria, which are not job-related and consistent with business necessity, to screen out Mr. Tuck on the basis of disability. [See *29 C.F.R. § 1630.10*].

119.     The District and DOES 1-20 used standards, criteria, or methods of administration, which are not job-related and consistent with business necessity, and which had the effect of discriminating on the basis of disability against Mr. Tuck. [See *29 C.F.R. § 1630.7*].

120.     The District and DOES 1-20 misrepresented guidelines created by a civil association known as the National Fire Protection Agency ("NFPA"), and falsely claimed that any person who has suffered a heart attack may not be employed as a firefighter, which claim is, and was, a misrepresentation and/or misapplication of the NFPA guidelines at all times it was made by defendants, showing direct evidence of discrimination under the standard followed in *Martin v. Union Pac. R.R. Co.*, Civil Action No. 16-cv-2821-WJM-GPG, 2018 U.S. Dist. LEXIS 94310, 9 (U.S.D.C. Colorado) (citing *Hawkins v. Schwan's Home Serv.*, 778 F.3d 877, 883-884 (10th Cir. 2015).

121.     On or about March 2016 the District and DOES 1-20 rewrote the job

description of fire captain so that the description now included inapplicable

portions of the NFPA guidelines which they chose to use as an excuse to refuse

to employ Mr. Tuck as a fire captain, engage in a good faith interactive process,

or even consider Mr. Tuck's ongoing request to return to work, showing direct

evidence of discrimination under the standard followed in *Martin v. Union Pac.*

*R.R. Co.*, Civil Action No. 16-cv-2821-WJM-GPG, 2018 U.S. Dist. LEXIS

94310, 9 (U.S.D.C. Colorado) (citing *Hawkins v. Schwan's Home Serv.*, 778

F.3d 877, 883-884 (10th Cir. 2015).

122.     As part of their decision to refuse a reasonable accommodation to Mr.

Tuck that would allow him to return to work, or engage in an interactive

process, the District and DOES 1-20 falsely claimed that they had lawfully

adopted the NFPA guidelines, amended the job description of fire captain to

include a reference to NFPA guidelines for firefighter candidates as a pretext to

refuse to consider the return of Mr. Tuck to his position, and refused to follow

those portions of NFPA guidelines that apply to actual Members of a fire

district, department or other agency which would require them to consider and

evaluate Mr. Tuck's individual abilities to perform his duties, showing direct

evidence of discrimination under the standard followed in *Martin v. Union Pac.*

*R.R. Co.*, Civil Action No. 16-cv-2821-WJM-GPG, 2018 U.S. Dist. LEXIS

94310, 9 (U.S.D.C. Colorado) (citing *Hawkins v. Schwan's Home Serv.*, 778 F.3d 877, 883-884 (10th Cir. 2015).

123.     Instead, the District and DOES 1-20 misrepresented and misapplied the NFPA guidelines, then wrongly and improperly sought to apply inapplicable portions of the NFPA guidelines retroactively to the employment of Mr. Tuck, as an excuse to refuse to allow him to return to work, while refusing to apply portions that would lead to Mr. Tuck's ability to return to work, showing direct evidence of discrimination under the standard followed in *Martin v. Union Pac. R.R. Co.*, Civil Action No. 16-cv-2821-WJM-GPG, 2018 U.S. Dist. LEXIS 94310, 9 (U.S.D.C. Colorado) (citing *Hawkins v. Schwan's Home Serv.*, 778 F.3d 877, 883-884 (10th Cir. 2015).

124.     These claims and misrepresentations and refusals by the District and DOES 1-20 were knowingly dishonest at all times, done as a means of harassment and cruelty towards Mr. Tuck, grossly reckless, malicious, or despicable, and done in order to refuse employment to Mr. Tuck on the basis of a disability.

125.     The order by the District and DOES 1-20 that Mr. Tuck not be permitted to enter any fire station of the District following his complaint to the EEOC was a further act of cruelty towards Mr. Tuck for seeking to return to employment and refusing to accept the discrimination by the District and DOES 1-20, which

made it more difficult for Mr. Tuck to exercise, interact with his friends and co-workers, and otherwise continue to maintain his mental and physical health. The order was unlawfully done to retaliate against Mr. Tuck for filing a complaint with the EEOC and in order to prevent Mr. Tuck from receiving benefits earned from more than twenty years of employment with the District. [See *20 C.F.R. § 1630.12*].

126.    The District and DOES 1-20 did not individually assess whether Mr. Tuck was able to perform the essential functions of his job or whether he could do so with reasonable accommodation and, in fact, refused to do so at all relevant times.

127.    Mr. Tuck is informed and believes that the District and DOES 1-20 treated him in this unlawful manner despite allowing a firefighter who also suffered a heart attack to return to his position after a leave of more than six months, following which the District and DOES 1-20 took part in an individualized consideration of that firefighter's ability to perform his duties, and allowed his return, following which the firefighter performed his essential job functions for years.

128.    The District and DOES 1-20 terminated Mr. Tuck solely because of a disability.

129.     The District and DOES 1-20 violated *42 U.S.C. § 12112 (b) (6)* by using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities in the absence of any applicable job-related or business necessity for doing so.

130.     The District and DOES 1-20 violated *29 C.F.R. § 1630.2 (r)* by disqualifying Mr. Tuck from employment based on unsubstantiated speculation about a future risk of injury and/or compensation claim despite his ability to perform essential job functions.

131.     The District and DOES 1-20 violated *42 U.S.C. § 12112 (b) (1)* by limiting, segregating or classifying Mr. Tuck in a way that adversely affected his opportunities and status because of his disability.

132.     The District and DOES 1-20 violated 4*2 U.S.C. § 12112(b) (3) (A) and (B)* by utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability or that perpetuate the discrimination of others who are subject to common administrative control.

133.     The District is a covered employer to which the ADA applies.

134.     As a direct and proximate result of the breach of their duties by Defendants, and each of them, Plaintiff experienced pain and suffering and emotional distress.

135.     As a direct and proximate result of the breach of duty by Defendants, and each of them, Plaintiff has suffered, and is continuing to suffer, economic and emotional damages, and other pain and suffering, in an amount in excess of the jurisdictional limits of this Court, or according to proof as will be shown in this action.

136.     The conduct of defendants as alleged was despicable, malicious, oppressive, grossly reckless and/or fraudulent, and was performed with a conscious disregard of Plaintiff's rights and interests and safety, thereby justifying exemplary and punitive damages in an amount to punish them for their conduct, make an example of them, and deter them from putting others through the abusive and dangerous treatment they caused Plaintiff to suffer.

**SECOND CAUSE OF ACTION FOR DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT OF 1973 [*29 U.S.C.A. §§ 706, 793, 794, 794a; 42 U.S.C.A. § 12102 (2)*; and *45 C.F.R., Part 84*] BY PLAINTIFF PETER A. TUCK AGAINST DEFENDANTS DURANGO FIRE PROTECTION DISTRICT AND DOES 1-20.**

137.     Mr. Tuck alleges and incorporates by reference herein as if restated in full each of the preceding paragraphs set forth above.

138.     Section 504 of the Rehabilitation Act, *29 U.S.C. § 794 (a)*, provides that:

"No otherwise qualified individual with a disability in the United States,

as defined by *Section 705 (20)* of this title shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..."

139.     Mr. Tuck is informed and believes that the District receives Federal financial assistance.

140.     The District is a "program or activity" as defined by *29 U.S.C. § 794 (b) (1) (A)*, which section includes, "a department, agency, special purpose district, or other instrumentality of a State or of a local government…."

141.     Mr. Tuck is an individual with a disability as defined by *29 U.S.C. § 705 (20)*.

142.     The District and DOES 1-20 terminated Mr. Tuck from his employment solely on the basis of his disability.

143.     Because the cardiac condition of Mr. Tuck substantially limits at least one of Mr. Tuck's major life activities Mr. Tuck is an individual with a disability under the Rehabilitation Act.

144.     Because Mr. Tuck has a record of a condition which substantially limits at least one of Mr. Tuck's major life activities Mr. Tuck is an individual with a disability under the Rehabilitation Act.

145.     Because the District and DOES 1-20 perceived Mr. Tuck as having a

disability that substantially limits at least one of Mr. Tuck's major life activities

Mr. Tuck is an individual with a disability under the Rehabilitation Act.

146.     Mr. Tuck is and was fully qualified to be a firefighter captain, and was

able to perform all the essential functions of the position once he recovered

from his heart attack, at least as of August 19, 2016, based on the tests and

affirmation of Mr. Tuck's treating cardiologist and  independent reviewing

physicians.

147.     As a direct and proximate result of the breach of their duties by

Defendants, and each of them, Mr. Tuck experienced pain and suffering and

emotional distress.

148.     As a direct and proximate result of the breach of their duties by

Defendants, and each of them, Mr. Tuck has suffered, and is continuing to

suffer, economic and emotional damages, and other pain and suffering, in an

amount in excess of the jurisdictional limits of this Court, or according to proof

as will be shown in this action.

149.     The conduct of defendants as alleged was despicable, malicious,

oppressive, grossly reckless and/or fraudulent, and was performed with a

conscious disregard of Mr. Tuck's rights and interests and safety, thereby

justifying exemplary and punitive damages in an amount to punish them for

their conduct, make an example of them, and deter them from putting others

through the abusive and dangerous treatment they caused Mr. Tuck to suffer.

**THIRD CAUSE OF ACTION FOR VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT ("CADA") [CRSA 24-34-301, ET SEQ.] BY PLAINTIFF PETER A. TUCK AGAINST DEFENDANTS DURANGO FIRE PROTECTION DISTRICT AND DOES 1-20.**

150.     Plaintiff alleges and incorporates by reference herein as if restated in full

each of the preceding paragraphs set forth above.

151.     Pursuant to *C.R.S. 24-34-301, section 2.5*, of the Colorado

Antidiscrimination Act ("CADA"), "Disability" has the same meaning as set

forth in the federal "Americans with Disabilities Act of 1990", *42 U.S.C. sec,*

*12101* et seq., and its related amendments and implementing regulations.

152.     Pursuant to *C.R.S. 24-34-301, section 5.6*, of the CADA, "Qualified

individual with a disability" or "individual with a disability" has the same

meaning as set forth in the federal "Americans with Disabilities Act of 1990",

*42 U.S.C. sec, 12101* et seq., and its related amendments and implementing

regulations.

153.     *Section 24-34-402(1)(a)* of the CADA provides that the following is a

discriminatory or unfair employment practice:

"For an employer to refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any person otherwise qualified because of disability…."

154.   *Section 24-34-402(1)(d) of the CADA provides that the following is a* discriminatory or unfair employment practice:

155.   "For any employer, employment agency, or labor organization to print or circulate or cause to be printed or circulated any statement, advertisement, or publication, or to use any form of application for employment or membership, or to make any inquiry in connection with prospective employment or membership that expresses, either directly or indirectly, any limitation, specification, or discrimination as to disability, race, creed, color, sex, sexual orientation, religion, age, national origin, or ancestry or intent to make any such limitation, specification, or discrimination, unless based upon a bona fide occupational qualification or required by and given to an agency of government for security reasons…."

156.   *Section 24-34-402(1)(e) of the CADA provides that the following is a* discriminatory or unfair employment practice if done by "...any person, whether or not an employer...or the employees or members thereof:

**"(I)** To aid, abet, incite, compel, or coerce the doing of any act defined in

this section to be a discriminatory or unfair employment practice;

**"(II)** To obstruct or prevent any person from complying with the

provisions of this part 4 or any order issued with respect thereto;

**"(III)** To attempt, either directly or indirectly, to commit any act defined

in this section to be a discriminatory or unfair employment practice;

**"(IV)** To discriminate against any person because such person has

opposed any practice made a discriminatory or an unfair employment

practice by this part 4…."

157.     The District and DOES 1-20 violated the CADA by terminating Mr.

Tuck's employment, and otherwise discriminating against him on the basis of a

disability, despite his ability to perform all functions of his position with the

District.

158.     The District and DOES 1-20 violated the CADA by printing or

circulating or causing to be printed or circulated a revised job description for

the position of Captain of the District, and/or by using such a form to require

membership as a firefighter with the District, and/or to make any inquiry in

connection with prospective employment or membership as a firefighter with

the District which expresses, either directly or indirectly, any limitation,

specification, or discrimination as to disability..., which was not based upon a

bona fide occupational qualification…." and which was done as a means of justifying its intention to discriminate against Mr. Tuck.

159.     The District and DOES 1-20 are persons under the CADA who acted to: aid, abet, incite, compel, or coerce discriminatory acts of the District; obstruct or prevent person(s) from complying with the CADA; attempt to commit a discriminatory or unfair employment practice; discriminate against any person because such person has opposed any practice made a discriminatory or an unfair employment practice by the CADA in taking the actions alleged above against Mr. Tuck.

160.     As a direct and proximate result of the breach of their duties by Defendants, and each of them, Plaintiff experienced pain and suffering and emotional distress.

161.     As a direct and proximate result of the breach of duty by Defendants, and each of them, Plaintiff has suffered, and is continuing to suffer, economic and emotional damages, and other pain and suffering, in an amount in excess of the jurisdictional limits of this Court, or according to proof as will be shown in this action.

162.     The conduct of defendants as alleged was despicable, malicious, oppressive, grossly reckless and/or fraudulent, and was performed with a conscious disregard of Plaintiff's rights and interests and safety, thereby

justifying exemplary and punitive damages in an amount to punish them for

their conduct, make an example of them, and deter them from putting others

through the abusive and dangerous treatment they caused Plaintiff to suffer.

**FOURTH CAUSE OF ACTION FOR VIOLATION OF *42 U.S.C. SECTION***

***1983* BY PLAINTIFF PETER A. TUCK AGAINST DEFENDANTS DURANGO**

**FIRE PROTECTION DISTRICT AND DOES 1-20**

163.     Plaintiff alleges and incorporates by reference herein as if restated in full

each of the preceding paragraphs set forth above numbered 1-149.

164.     Under color of a purported statute, ordinance, regulation, custom, or

usage, of Colorado law, the District and DOES 1-20 subjected Mr. Tuck to the

deprivation of rights, privileges, or immunities secured by the Constitution and

laws of the United States.

165.     Among other unlawful acts leading to the deprivation of  rights,

privileges, or immunities secured by the Constitution and laws of the United

States, the District and DOES 1-20 falsely claimed that they were prohibited

from continuing to employ Mr. Tuck as a firefighter, or even consider whether

or not he was able to perform his duties, as the result of a disability.

166.     The false claims by defendants, and each of them, were knowingly and

intentionally dishonest and despicable and done solely as a pretext in their goal

of discriminating against Mr. Tuck on the basis of a disability.

167.     As a direct and proximate result of the breach of their duties by Defendants, and each of them, Plaintiff experienced pain and suffering and emotional distress.

168.     As a direct and proximate result of the breach of duty by Defendants, and each of them, Plaintiff has suffered, and is continuing to suffer, economic and emotional damages, and other pain and suffering, in an amount in excess of the jurisdictional limits of this Court, or according to proof as will be shown in this action.

169.     The conduct of defendants as alleged was despicable, oppressive, malicious, grossly reckless and/or fraudulent, and was performed with a conscious disregard of Mr. Tuck's rights and interests and safety, thereby justifying exemplary and punitive damages in an amount to punish them for their conduct, make an example of them, and deter them from putting others through the abusive and dangerous treatment they caused Mr. Tuck to suffer.

**FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY PLAINTIFF PETE TUCK AGAINST DEFENDANTS DURANGO FIRE PROTECTION DISTRICT AND DOES 1-20**

170.     Plaintiff alleges and incorporates by reference herein as if restated in full each of the preceding paragraphs.

171.     The dishonest, malicious, reckless, outrageous, indifferent and cruel manner in which Mr. Tuck was treated by the District and DOES 1-20 was so blatant and obvious that only someone intending to cause Mr. Tuck emotional distress, or acting with dishonesty, maliciousness, gross recklessness, disregard or indifference, would have acted in the manner alleged above.

172.     As a proximate result of the misconduct of the District and DOES 1-20, Mr. Tuck suffered severe emotional distress, as well as severe physical pain and discomfort, which is ongoing.

173.     Defendants the District and DOES 1-20 conduct as alleged was despicable, dishonest, oppressive, malicious, grossly reckless, indifferent and/or fraudulent, and was performed with a conscious disregard of Mr. Tuck's rights and interests and safety, thereby justifying exemplary and punitive damages in an amount to punish them for their conduct, make an example of them, and deter them from putting others through the abusive and dangerous treatment suffered by Mr. Tuck.

### PRAYER FOR RELIEF

Mr. Tuck prays for Judgment against Defendants, and each of them, as follows:

### FIRST CAUSE OF ACTION FOR VIOLATION OF THE

### AMERICANS WITH DISABILITIES ACT

(Against Defendant Durango Fire Protection District and DOES 1-20)

1.    Back pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

2.    Front pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

3.    Compensatory and consequential damages, including for emotional distress;

4.    Punitive damages;

5.    Pre-judgment and post-judgment interest at the highest lawful rate;

6.    Attorneys' fees and costs of this action; and

7.    Any such further relief as the Court deems appropriate.

## SECOND CAUSE OF ACTION FOR VIOLATION OF SECTION 504 OF THE FEDERAL REHABILITATION ACT

(Against Defendant Durango Fire Protection District and DOES 1-20)

1.    Back pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

2.    Front pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

3.    Compensatory and consequential damages, including for emotional distress;

4.    Punitive damages;

5.      Pre-judgment and post-judgment interest at the highest lawful rate;

6.      Attorneys' fees and costs of this action; and

7.      Any such further relief as the Court deems appropriate.

### THIRD CAUSE OF ACTION FOR VIOLATION OF THE

### COLORADO ANTI-DISCRIMINATION ACT

(Against Defendants Durango Fire Protection District and DOES 1-20)

1.      Back pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

2.      Front pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

3.      Compensatory and consequential damages, including for emotional distress;

4.      Punitive damages;

5.      Pre-judgment and post-judgment interest at the highest lawful rate;

6.      Attorneys' fees and costs of this action; and

7.      Any such further relief as the Court deems appropriate.

### FOURTH CAUSE OF ACTION FOR VIOLATION OF 29 U.S.C.

### SECTION 1983 CIVIL RIGHTS ACT

(Against Defendants Durango Fire Protection District and DOES 1-20)

1.    Back pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

2.    Front pay in an amount to be determined at trial, including an award to compensate for the tax consequences of a lump sum payment;

3.    Compensatory and consequential damages, including for emotional distress;

4.    Punitive damages;

5.    Pre-judgment and post-judgment interest at the highest lawful rate;

6.    Attorneys' fees and costs of this action; and

7.    Any such further relief as the Court deems appropriate.

## FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Defendants Durango Fire Protection District and DOES 1-20)

1.    For actual, general, compensatory and consequential damages, including but not limited to emotional distress, in excess of the jurisdictional minimum of this Court, in an amount to be proven at trial or otherwise allowed by the Court;

2.    Pre-judgment and post-judgment interest at the highest lawful rate;

3.    Punitive and exemplary damages in an amount sufficient to penalize Defendants, and each of them, for their misconduct, deter similar misconduct, and/or make an example of Defendant(s) for their

misconduct, in an amount to be determined at trial in this action or otherwise allowed by the Court.

Mr. Tuck demands a trial by jury in this action.

Respectfully submitted,

DATED: 1/7/2019                         LAW OFFICES OF KRISS HALPERN


_s/Kriss Halpern_____
Kriss Halpern, Esq.
Law Offices of Kriss Halpern
1021 5th Street, Suite 209
Santa Monica, CA 90403
Telephone: 310-458-9340
Fax: 310-395-4786
Email: krisshalpern11@gmail.com
Attorney for Plaintiff Peter A. Tuck


Plaintiff Peter A. Tuck:

1020 County Road 125

Hesperus, CO 81326

COMPLAINT OF PLAINTIFF PETER A. TUCK